## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CELIA CASTELAZ, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: _____ |
| v. | **CLASS ACTION COMPLAINT** |
| ESTEE LAUDER COMPANIES, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

Celia Castelaz ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, the "Class," as more fully defined below), brings this Class Action Complaint against Defendant Estée Lauder Companies, Inc. ("Estée Lauder" or "Defendant"), and, based upon Plaintiff's personal knowledge, investigation by retained counsel, and personal belief, alleges as follows:

## NATURE OF THE CASE

1.      When consumers shop for products, they expect that companies will follow the law in promoting and advertising those products.

2.      Consumers expect that, if they are sharing their data with companies in connection with a potential transaction, the companies will be transparent about what data is being collected, how it is being used, and by whom.[1] This is particularly the case when companies collect what has come to be known as "biometric data."

3.      Facial scanning technology, which is used for anything from applying filters to photographs to verifying a user's identity, uses biometric data. Fingerprint authentication, where a user's fingerprint is used in lieu of a password or key, is another type of technology that uses biometric data.

4.      While more than half of consumers are comfortable using fingerprint scans,[2] consumers have substantial privacy concerns regarding the use of facial scanning. According to a recent survey, more than 80% of consumers are uncomfortable with apps storing images of their

---

[1] Lisa Joy Rosner, How Biometric Data Will Shift The Privacy Conversation, *Forbes* (July 2, 2019), *available at* https://www.forbes.com/sites/forbescommunicationscouncil/2019/07/02/how-biometric-data-will-shift-the-privacy-conversation/?sh=38b3ce093f4c.

[2] New Survey on Biometric Technology Shows Consumers Are OK With Some Forms and Wary of Others, *UT News* (May 3, 2018), https://news.utexas.edu/2018/05/03/new-survey-on-consumer-attitudes-toward-biometric-technology/.

faces.[3] And for good reason: for example, in the not-too-distant past, a relatively unknown company, Clearview AI, was caught scraping user photos from social media companies' databases and using facial-recognition technology on those photos to compile a database for secret and illicit surveillance purposes.[4]

5.      In response to the ever-increasing prevalence and proliferation of biometric information collection (whether lawful or not), the Illinois General Assembly passed the Biometric Information Privacy Act of 2008, 740 Ill. Comp. Stat. §§14, *et seq*. ("BIPA").

6.      BIPA recognizes that because biometric information is "unlike other unique identifiers that are used to access finances or other sensitive information," in that it cannot be changed and is "biologically unique to the individual," special protections needed to be placed upon its use, collection, retention, and destruction.

7.      In the language of the BIPA statute itself, the Illinois General Assembly directly addressed the public's stake in this important sphere of data privacy, noting that "[a]n overwhelming majority of members of the public *are weary of the use of biometrics when such information is tied to finances and other personal information.*" 740 Ill. Comp. Stat. §14/5 (emphasis added).

8.      Recognizing that typical consumers are not equipped to defend themselves from large corporations bent on acquiring and monetizing their most private, unchangeable information, the Illinois Legislature, by enacting BIPA, gave consumers a powerful, protective tool.

---

[3] Danielle Commisso, Concerns Grow Over Consumer Privacy and Facial Recognition Tech, Civic Science (Apr. 20, 2021), *available at* https://civicscience.com/concerns-grow-over-consumer-privacy-and-facial-recognition-tech/#:~:text=Like%20most%20new%20technologies%2C%20younger%20generations%20are%20more,facial%20recognition%20use%20on%20social%20media%20and%20apps.

[4] Will Knight, Clearview AI Has New Tools to Identify You in Photos, *Wired* (Oct. 4, 2021), *available at* Clearview AI Has New Tools to Identify You in Photos | WIRED.

9.      Despite consumer concerns regarding facial-scanning technology, and BIPA's clear mandate, Estée Lauder has refused, and continues to refuse, to inform users that it is using technology on its website to collect their biometric facial scans, and neither informs users that their biometric identifiers are being collected, nor asks for their consent.

10.     Estée Lauder sells the image of luxury to consumers, inviting them to virtually "try on" its designer makeup through its website's "Virtual Try-On" feature. Through this feature, visitors to Estée Lauder's website—including Plaintiff and the other Class members—are able to view themselves with various makeup products on their face. All a user has to do is enable their computer or phone camera, after which Estée Lauder's website creates a live video feed of the user's face, with the selected makeup products applied on top of the live feed. Alternatively, a user can use their computer or phone camera to take a photo to be used by the website or upload their own, pre-taken photo to the website.

11.     But, unbeknownst to its website users—including Plaintiff and the other Class members—Estée Lauder collects detailed and sensitive biometric identifiers and information, including complete facial scans, of its users through the Virtual Try-On tool, and it does this without first obtaining their consent, or informing them that this data is being collected.

12.     Estée Lauder also fails to disclose to visitors of its website who use the Virtual Try-On tools—including Plaintiff and the other Class members—that their biometric information or biometric identifiers are being collected or stored.

13.     Estée Lauder also fails to provide users of a specific purpose for the collection of their biometric information or biometric identifiers, or a schedule setting out the length of time during which that biometric information or biometric identifiers will be collected, stored, used, or will be destroyed.

14.     Estée Lauder has violated BIPA—and continues to violate BIPA—each and every time a website visitor based in Illinois uses the Virtual Try-On tool, because Estée Lauder continues to collect and store or facilitate the storage of biometric information or biometric identifiers without disclosure to or consent of any of the consumers who try on cosmetics on their website, necessarily using Estée Lauder's Virtual Try-On tool to do so.

15.     As a result of Estée Lauder's BIPA violations—violations that are ongoing and continue through the present day—Plaintiff, individually and on behalf of the other Class members, asks the Court to impose upon Estée Lauder the BIPA-mandated statutory penalties relating to the collection, storage, and disclosure of Plaintiff's biometric identifiers and biometric information, as well as injunctive relief requiring Estée Lauder's destruction of already-collected and stored information, and its adoption of disclosures which inform consumers about Estée Lauder's collection of their biometric data and identifiers.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiff and Defendant are domiciled in different states; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

17.     This Court has personal jurisdiction over Estée Lauder because Estée Lauder regularly conducts business throughout New York, and its principal place of business and headquarters are in New York.

18.     Venue is also appropriate in this District because, although Plaintiff did not view or consent to the Terms and Conditions ("Terms") on Estée Lauder's website, and disputes whether

they are operative over her claims, the Terms require that any action brought against Estée Lauder be brought in New York.

## PARTIES

### *Plaintiff*

19.     Ms. Celia Castelaz is a citizen and a resident of DuPage County, in the State of Illinois. While at her residence in DuPage, Ms. Castelaz used the Virtual Try-On tool on Estée Lauder's website to take her picture and used Estée Lauder's website multiple times over the past 6-8 months to try on various types of makeup, spending approximately thirty minutes to one hour on Estée Lauder's website each time that she used it.

20.     Ms. Castelaz does not recall reviewing Estée Lauder's website terms and conditions and did not see any indication that her biometric information would be collected or distributed in Estée Lauder's website terms and conditions. Ms. Castelaz was also not informed by the Virtual Try-On tool (for instance, by a pop-up notification upon activation of the tool) that using the tool would allow Estée Lauder to collect her biometric information and identifiers.

21.     Ms. Castelaz did not understand that Estée Lauder would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool had she been aware of this fact.

22.     Estée Lauder never obtained, or attempted to obtain, Ms. Castelaz's informed, written consent to collect, transmit, store, or process her biometric information, nor did Estée Lauder inform Ms. Castelaz about the length of time her biometric information would be stored, when it would be destroyed, or that it would transfer her biometric information to a third party for processing.

23.     Ms. Castelaz never provided a written release to Estée Lauder authorizing it to collect, store, or use her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

24.     Ms. Castelaz does not remember seeing any terms of service or privacy policy when using the Virtual Try-On tool, nor does she remember Estée Lauder making such policies readily accessible so that she could review them prior to using the Virtual Try-On tool.

***Defendant***

25.     Estée Lauder Companies, Inc. is an American company, incorporated in Delaware, with its principal place of business at 767 Fifth Avenue, New York, NY 10153.

26.     Estée Lauder Companies Inc. is one of the world's leading manufacturers and marketers of quality skin care, makeup, fragrance, and hair care products. The company's products are sold in approximately 150 countries and territories under brand names including: Estée Lauder, Aramis, Clinique, Lab Series, Origins, Tommy Hilfiger, M·A·C, La Mer, Bobbi Brown, Donna Karan New York, DKNY, Aveda, Jo Malone London, Bumble and bumble, Michael Kors, Darphin Paris, TOM FORD BEAUTY, Smashbox, Ermenegildo Zegna, AERIN, Le Labo, Editions de Parfums Frédéric Malle, GLAMGLOW, KILIAN PARIS, Too Faced and Dr. Jart+, and the DECIEM family of brands, including The Ordinary and NIOD.

27.     In 2021, the company had $16.22 billion in sales and $2.62 billion in operating income.

## FACTUAL ALLEGATIONS

**A.     BIPA'S Legal Framework**

28.     The Illinois General Assembly enacted BIPA to protect the privacy rights of every Illinois resident who has their unique, biometric identifiers captured or retained by self-interested, profit-obsessed companies.

29.     In enacting BIPA, the General Assembly found that the sensitivity of biometric information and identifiers warrants heightened protection because companies frequently collect it from individuals like Plaintiff and the other Class members. Specifically, the General Assembly found that "[b]iometrics are unlike other unique identifiers" like Social Security Numbers because they are "biologically unique to the individual" and cannot be changed if compromised. 740 Ill. Comp. Stat. 14/5(c).

30.     Thus, a person whose biometrics are compromised "has no recourse" and "is at heightened risk for identify theft." *Id*.

31.     When enacting BIPA, the General Assembly recognized that "[t]he full ramifications of biometric technology are not fully known." 740 Ill. Comp. Stat. 14/5(e). Therefore, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 Ill. Comp. Stat. 14/5(f).

32.     BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. 14/10.

33.     "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id*.

7

34.     Accordingly, BIPA requires "private entities"—including companies like Estée Lauder—that collect certain biometric identifiers or biometric information, or cause such information and identifiers to be collected, to take a number of specific steps to safeguard the biometric data they collect, store, or capture.

35.     Specifically, companies that collect the above-referenced biometric identifiers or biometric information, such as Estée Lauder, must obtain informed consent from consumers prior to collecting such data from them, and they must publicly disclose to consumers their uses, retention of, and a schedule for destruction of the biometric information or identifiers that they do collect.

36.     With respect to safeguarding biometrics, BIPA requires that private entities—including companies like Estée Lauder—that possess biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id*. § 14/15(a).

37.     BIPA also requires that private entities in possession of biometric identifiers or biometric information—including companies like Estée Lauder—must safeguard such data "using the reasonable standard of care within the private entity's industry" and must "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id*. § 14/15(e).

38.    With respect to informed consent, BIPA provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id*. § 14/15(6).

39.    BIPA further provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." *Id*. § 14/l1(c).

40.    Under BIPA, private entities—including companies like Estée Lauder—are prohibited from disclosing, redisclosing, or otherwise disseminating a consumer's biometric identifier or biometric information (or causing it to be done) unless the consumer has consented to such disclosure or redisclosure. *Id*. § 14/15(d).

41.    BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id*. § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation was intentional or reckless, BIPA provides for the greater of actual damages and liquidated damages of $5,000 per violation. *Id*.

**B.     Estée Lauder Collects Its Website Users' Biometric Information And Identifiers Through Its Virtual Try-On Tool**

42.     Defendant Estée Lauder's wholly owned subsidiary, Estée Lauder, Inc., operates its website (https://www.esteelauder.com/virtually-try-on-makeup-skincare) and markets and sells its products (including makeup and skincare) through that website.

43.     Estée Lauder markets and promotes makeup through its North American website, by allowing users and potential customers to use a tool called "Virtual Try-On" which permits users to try on makeup using Virtual Try-On tools by taking a "selfie" or uploading a picture. Through its Virtual Try-On features, Estée Lauder is collecting, capturing, possessing, or otherwise obtaining biometric information from its online visitors.

44.     Visitors who enter esteelauder.com are able to use the site's Virtual Try-On features to try on various Estée Lauder products. The Virtual Try-On features are available for lipstick, foundation, skin analysis, and for trying a "complete look" which simulates the use of several products at the same time.

45.     While the lipstick and complete look features are available both on computers and mobile devices, the foundation and skin analysis features are only accessible using a smartphone camera, which scans a QR code that leads to the Virtual Try-On page. The process of using the Virtual Try-On is detailed below and is similar for all the Virtual Try-On features available on esteelauder.com.

46.     For example, to use the lipstick feature, visitors click the "TRY IT ON" button located on the product's picture, as shown in the image below:



47.     After clicking "TRY IT ON," visitors are prompted to take a selfie with the "Live Camera" using the camera on their computer or mobile device. Alternatively, visitors may opt to upload a photo. Visitors are also informed that their image will be used to provide them with the virtual try-on experience and provided with a link to the Privacy Policy. A screenshot of the page is shown below:



48.     The above notice does not inform visitors who use the Virtual Try-on feature that their biometric data will be collected, captured, possessed, or otherwise obtained if and when they use the feature. It merely presents a link to the Site's Privacy Policy and informs visitors that their "image" will be used for the "virtual try-on experience." Accordingly, when a user allows their image to be captured, the user does not consent to have their biometric data collected, captured, possessed, or otherwise obtained, only their image.

49.     When visitors allow Estée Lauder to access their camera or photo Estée Lauder collects, captures, possesses, or otherwise obtains their facial biometric data in order to show the visitor how the product will look on his or her face.

50.     Estée Lauder's Virtual Try-On feature is powered by YouCam Makeup. YouCam Makeup is owned by an AI/AR beauty tech solutions company that provides facial mapping and virtual try on technology services for beauty brands, including Estée Lauder. YouCam Makeup's virtual try-on feature employs advanced facial detection technology, as demonstrated by the feature's ability to focus and move along with each face that it detects.

 

51.     Estée Lauder collects, captures, possesses, or otherwise obtains visitors' biometric data locally using YouCam's proprietary algorithm downloaded from YouCam's server.

52.     In Estée Lauder's Privacy Policy, the company states that it collects "[p]hysical characteristics, such as your hair type and color, skin type, and eye color...." However, Estée Lauder does not inform visitors anywhere in its Privacy Policy, Terms & Conditions, nor anywhere else on its website that it collects, captures, possesses, or otherwise obtains biometric data.

53.     Furthermore, Estée Lauder does not require visitors' written consent to collect, capture, possess, or otherwise obtain their biometric information.

54.     Estée Lauder purports to include Terms & Conditions on its website, which include an arbitration clause, class action waiver, and New York jurisdiction and choice-of-law clauses.

55. As shown in the images above, visitors are not asked to read Estée Lauder's Terms & Conditions to agree to them prior to using the Virtual Try-On features and assenting to the terms is not a necessary condition to use the Virtual Try-On features.

56. Furthermore, the Terms & Conditions hyperlink is only visible once a user scrolls down to the bottom of Estée Lauder's page and appears in small letters at the bottom of the screen.



57. In further contravention of BIPA, Estée Lauder also does not have a publicly-available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from its website users, including Plaintiff and the other Class members.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action as a class action pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> All persons whose biometric identifiers were captured by Estée Lauder through use of the Virtual Try-On tool on Defendant's websites residing in Illinois from four years preceding the date of the filing of this action to the present.

59. Excluded from the Class are Estée Lauder and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff

assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

60.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

61.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. While Plaintiff believes that there are not less than one hundred thousand (100,000) Class members, the precise number of Class members is presently unknown to Plaintiff, but may be ascertained from Estée Lauder's books, records, and electronically stored information. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

62.     **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a.      Whether Estée Lauder qualifies as a "private entity" as defined by 740 Ill. Comp. Stat. 14/10;

b.      Whether Estée Lauder captures, collects, stores, or distributes information that qualifies as "biometric information" or "biometric identifiers" of users of the Virtual Try-On tool on Estée Lauder's website, as defined by 740 Ill. Comp. Stat. 14/10 and 740 Ill. Comp. Stat. 14/15, *et seq*.;

c.      Whether Estée Lauder developed or made publicly available a written policy establishing a retention schedule and guidelines for destroying its Virtual Try-On tool users' biometric information and biometric identifiers, 740 Ill. Comp. Stat. 14/15(a) requires;

d.      Whether Estée Lauder obtained an executed written release from each user of Estée Lauder's Virtual Try-On tool before capturing their biometric information and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(b) requires;

15

e.   Whether Estée Lauder, previously or on an ongoing basis, collected, captured, purchased, received through trade, or otherwise obtained its website users' biometric identifiers or biometric information through its Virtual Try-On tool on its website, in violation of 740 Ill. Comp. Stat. 14, *et seq*.;

f.   Whether Estée Lauder's conduct was and is willful, reckless, or negligent;

g.   The appropriate measure of damages to award Plaintiff and the other Class members; and

h.   The appropriate injunctive relief to which Plaintiff and the other Class members are entitled.

63.   **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each of the other Class members used the same Virtual Try-On tool on Estée Lauder's website, through which Estée Lauder collected, captured, purchased, received through trade, or otherwise obtained their biometric identifiers or biometric information, and did not inform Plaintiff or the other Class members of such collection, capture, purchase, receiving through trade, or otherwise obtaining of such biometric identifiers or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric information or biometric identifiers from Plaintiff or the other Class members.

64.   **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where a defendant breached statutory obligations, and Plaintiff intends to vigorously prosecute this action. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

65.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Estée Lauder acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below.

66.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
Violation of 740 Ill. Comp. Stat. 14/15(b)
**(Failure to Inform in Writing and Obtain Written Release from Users Prior to Capturing, Collecting, or Storing Biometric Identifiers)**

67.     Plaintiff reasserts, realleges, and incorporates by reference each of the allegations contained in Paragraphs 1 through 66 (above), as though asserted and alleged herein.

68.     Plaintiff brings this claim individually and on behalf of the other Class members.

69.     Defendants' Virtual Try-On technology captured—and continues to capture—Plaintiff's and the other Class members' facial geometry information.

70.     Facial geometry is a biometric identifier protected by BIPA.

71.     BIPA prohibits private entities like Estée Lauder from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining website users' biometric identifiers or biometric information without first informing them in writing of such activities; informing them

in writing of the specific purpose and length of term for which biometric identifiers or biometric information are being collected, stored, and used; and obtaining a written release executed by the websites users whose biometric identifiers or biometric information is being collected.

72.     Estée Lauder does not inform its customers in writing that their biometric information will be collected through the use of the Virtual Try-On tool; does not inform them in writing of the specific purpose and length of time that their biometric information will be collected, stored, and used; and does not obtain written consent from its customers, affirming that by using Estée Lauder's Virtual Try-On tool, their biometric information and biometric identifiers will be collected.

73.     Upon information and belief, Estée Lauder is continuing to collect, capture, and store biometric information and biometric identifiers of its website's users, without the specific permission required by BIPA.

74.     Plaintiff and the other Class members have been injured by Estée Lauder's conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to Estée Lauder's collection, capture, and storage of their biometric information and biometric identifiers, and the sharing of that data with third parties; accordingly, the imposition of statutory damages under BIPA is appropriate here.

<u>**SECOND CAUSE OF ACTION**</u>
**Violation of 740 Ill. Comp. Stat. 14/15(a)**
**(Failure to Develop and Make Publicly Available a Written Policy for Retention and Destruction of Biometric Identifiers)**
**Damages and Injunctive Relief**

75.     Plaintiff reasserts, realleges, and incorporates by reference each of the allegations contained in Paragraphs 1 through 66 (above), as though asserted and alleged herein.

76.     Plaintiff brings this claim individually and on behalf of the other Class members.

77.     Defendant's Virtual Try-On tool operates by capturing the facial geometry of users of Estée Lauder's Virtual Try-On tool, including Plaintiff and the other Class members.

78.     Facial geometry is a biometric identifier or biometric information, protected by BIPA.

79.     BIPA requires private entities, like Estée Lauder, in possession of biometric identifiers or biometric information to develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first.

80.     Estée Lauder did not develop, possess, or publish to its website users—including Plaintiff and the other Class members—such a written policy at any time during its capture, collection, or storage of Plaintiff's and the other Class members' biometric information or biometric identifiers, which Estée Lauder caused to be obtained through their use of the Virtual Try-On tool on Estée Lauder's website.

81.     As a result, Estée Lauder denied Plaintiff and the other Class members of their rights under BIPA to be made aware of their retention and destruction policies as to their biometric identifiers. Additionally, Estée Lauder's failure to develop the required retention and destruction policies placed Plaintiff's and the other Class members' sensitive biometric identifiers at risk of compromise or illicit use by Estée Lauder and others.

82.     Plaintiff and the other Class members have been injured by Estée Lauder's conduct, as alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to Estée Lauder's collection, capture, and

storage of their biometric information and biometric identifiers, and its sharing of that data with foreign companies; accordingly, the imposition of statutory damages under BIPA is appropriate here.

83.    Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. 14/20(4), requiring Estée Lauder to develop a written policy, and inform Plaintiff and the other Class members of that policy, after ensuring that their information is destroyed.

### REQUEST FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter an order granting the following relief:

a.    Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the class defined herein;

b.    Appointing Plaintiff as representative of the Class and her undersigned counsel as class counsel;

c.    Entering judgment in favor of Plaintiff and the other Class members and against Estée Lauder;

d.    Awarding Plaintiff and the other Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each of Estée Lauder's BIPA violations;

e.    Issuing an injunction ordering Estée Lauder to comply with BIPA and to disclose to Plaintiff and the other Class members whether Estée Lauder possesses their biometric identifiers or biometric information, Estée Lauder's uses of their

biometric information or biometric identifiers; and Estée Lauder's retention and destruction policies regarding their biometric information or biometric identifiers;

f.  Issuing an injunction ordering Estée Lauder to comply with BIPA by preparing, producing, or adopting a publicly published retention and destruction policy for the biometric information or biometric identifiers that it collects;

g.  Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 Ill. Comp. Stat. 14/20; and

h.  Granting such other and further relief as the Court deems appropriate.

## JURY TRIAL REQUESTED

Plaintiff, individually and on behalf of the other Class members, requests a trial by jury on all claims so triable.


Dated: May 20, 2022                                  Respectfully submitted


                                                     */s/Steven M. Nathan*
                                                     STEVEN M. NATHAN
                                                     snathan@hausfeld.com
                                                     **HAUSFELD LLP**
                                                     33 Whitehall St., 14th Floor
                                                     New York, New York 10004
                                                     Telephone: (646) 357-1100

                                                     JAMES J. PIZZIRUSSO*
                                                     jpizzirusso@hausfeld.com
                                                     **HAUSFELD LLP**
                                                     888 16th Street, NW, Suite 300
                                                     Washington, D.C. 20006
                                                     Telephone: (202) 540-7200

DAVID A. STRAITE
dstraite@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
One Grand Central Place
60  East 42nd Street, Suite 2400
New York, New York 10165
Telephone: (646) 933-1000

ADAM J. LEVITT
alevitt@dicellolevitt.com
AMY E. KELLER*
akeller@dicellolevitt.com
JAMES A. ULWICK*
julwick@dicellolevitt.com
SHARON CRUZ*
scruz@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

Don Bivens*
don@donbivens.com
**DON BIVENS PLLC**
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

***Counsel for Plaintiff and the Proposed
Class***

*Pro Hac Vice Admission
Applications Forthcoming*