**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CELIA CASTELAZ, individually and on behalf of all others similarly situated, <br><br>         Plaintiff, <br><br>    v. <br><br> THE ESTÉE LAUDER COMPANIES, INC., <br><br>         Defendant. | Case No. 1:22-cv-04157-NRB <br><br> Hon. Naomi Reice Buchwald <br><br> Magistrate Judge Sarah L. Cave <br><br> **Oral Argument Requested** |

**DEFENDANT THE ESTÉE LAUDER COMPANIES, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 4

    A.    Plaintiff's BIPA Claims Against Estée Lauder.................................... 4

    B.    The Website's Terms Contain Binding Arbitration and Class Action Waiver Provisions.................................................................................... 5

ARGUMENT ...................................................................................................... 7

I.    THE COMPLAINT SHOULD BE DISMISSED IN FAVOR OF ARBITRATION ON AN INDIVIDUAL BASIS.................................................................. 7

    A.    Plaintiff Agreed to the Terms' Arbitration and Class Action Waiver Provisions.................................................................................... 8

        1.    Plaintiff Had Actual and Constructive Notice of the Terms....................... 8

        2.    Plaintiff Is Bound By the Terms Under the Doctrine of Equitable Estoppel ...................................................................... 11

    B.    The Arbitration Agreement Delegates Questions of Arbitrability and Scope to the Arbitrator........................................................................ 13

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A PLAUSIBLE BIPA CLAIM ...................................................... 14

    A.    Plaintiff Fails to Plausibly Allege That Any of Estée Lauder's Alleged Conduct Occurred in Illinois......................................................... 15

    B.    Plaintiff Fails to Plausibly Allege That Estée Lauder Collected or Is in Possession of Her Biometric Information............................................ 18

    C.    Plaintiff Fails to Plausibly Allege Intentional, Reckless, or Negligent Conduct by Estée Lauder .............................................................. 20

III.    PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT CLAIMS AGAINST ESTÉE LAUDER FOR ALLEGED BIPA VIOLATIONS .......................... 21

CONCLUSION.................................................................................................. 24

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Allen v. Shutterfly*,
    2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ......................................................12

*Am. E Grp. LLC v. Livewire Ergogenics Inc.*,
    32 F. Supp. 3d 390 (S.D.N.Y. 2020) ...................................................................8

*Arshad v. Transp. Sys.*,
    183 F. Supp. 3d 442 (S.D.N.Y. 2016) (Buchwald, J.) .........................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................3, 15, 19, 22

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ...........................................................................7

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005) ...............................................................15, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................3, 15

*Bethune v. Lendingclub Corp.*,
    2017 WL 462287 (S.D.N.Y. Jan. 30, 2017) (Buchwald, J.) ....................................8

*Bldg. Trades Pension Fund of W. Pa. v. Insperity, Inc.*,
    2022 WL 784017 (S.D.N.Y. Mar. 15, 2022) (Buchwald, J.) ...................................24

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
    2005 WL 756610 (N.D. Cal. April 1, 2005) .........................................................11

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
    208 F. Supp. 3d 494 (E.D.N.Y. 2016) .................................................................8

*Carvant Fin. LLC v. Autoguard Advantage Corp.*,
    958 F. Supp. 2d 390 (E.D.N.Y. 2013) ...............................................................13

*Carwile v. Samsung Telecomms. Am., LLC*,
    2013 WL 11030374 (C.D. Cal. July 9, 2013) ......................................................12

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1618 (2018) .............................................................................7

*Feld v. Postmates, Inc.*,
   442 F. Supp. 3d 825 (S.D.N.Y. 2020).........................................................................10

*Great Lengths Universal Hair Extensions S.R.L. v. Gold*,
   2017 WL 1731184 (S.D.N.Y. Mar. 29, 2017) .........................................................12

*Harty v. W. Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ...............................................................................21, 23

*HD Brous & Co. v. Mrzglocki*,
   2004 WL 376555 (S.D.N.Y. Feb. 26, 2004)............................................................12

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) ......................................................................19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)................................................................................................13

*Himber v. Live Nation Worldwide, Inc.*,
   2018 WL 2304770 (E.D.N.Y. May 21, 2018) ..........................................................9

*Horton v. Dow Jones & Co.*,
   2019 WL 952314 (S.D.N.Y. Feb. 27, 2019), *aff'd*, 804 F. App'x 81 (2d Cir. 2020) ...............8

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
   62 F.3d 69 (2d Cir. 1995).........................................................................................4

*Jacobs v. Hanwha Techwin Am., Inc.*,
   2021 WL 3172967 (N.D. Ill. July 27, 2021) ...........................................................19

*Kloss v. Acuant, Inc.*,
   462 F. Supp. 3d 873 (N.D. Ill. 2020) ......................................................................19

*KPA Promotions & Awards, Inc. v. JPMorgan Chase & Co.*,
   2021 WL 1317163 (S.D.N.Y. Apr. 8, 2021) (Buchwald, J.) .........................7, 8, 14

*Kutluca v. PQ N.Y. Inc.*,
   266 F. Supp. 3d 691 (S.D.N.Y. 2017).....................................................................24

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*,
   86 F. Supp. 3d 277 (S.D.N.Y. 2015) .......................................................................12

*Laufer v. Ganesha Hospitality LLC*,
   2022 WL 2444747 (2d Cir. July 5, 2022) ................................................................23

*Lewis v. ANSYS, Inc.*,
    2021 WL 1199072 (S.D.N.Y. Mar. 30, 2021) ........................................................8

*Maddox v. Bank of N.Y. Mellon Trust Co.*,
    19 F.4th 58 (2d Cir. 2021) ................................................ *passim*

*Madison Capital Mkts. v. Starneth Europe B.V.*,
    2016 WL 4484251 (S.D.N.Y. Aug. 23, 2016) ...........................................24

*Marsh v. CSL Plasma Inc.*,
    503 F. Supp. 3d 677 (N.D. Ill. 2020) .....................................................15

*McGoveran v. Amazon Web Servs., Inc.*,
    2021 WL 4502089 (D. Del. Sept. 30, 2021) ............................................. *passim*

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ..............................................................9, 10

*MoistTech Corp. v. Sensortech Sys., Inc.*,
    2015 WL 12778416 (C.D. Cal. Sept. 14, 2015) ......................................12

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) .....................................................21

*Nortek Inc. v. ITT LLC*,
    2022 WL 656896 (S.D.N.Y. Mar. 4, 2022) ...........................................12

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ...............................................................11

*Reis, Inc. v. Spring11 LLC*,
    2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016) ......................................8, 9

*Rogers v. CSX Intermodal Terminals*,
    409 F. Supp. 3d 612 (N.D. Ill. 2019) .....................................................20

*Rosenberg v. McCarthy, Burgess & Wolff, Inc.*,
    2022 WL 3030390 (E.D.N.Y. Aug. 1, 2022) ....................................22, 23

*Rosner v. Star Gas Partners, L.P.*,
    344 F. App'x 642 (2d Cir. 2009) ...........................................................24

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) ............................................19

*Super Pawn Jewelry & Loan, LLC v. Am. Env't Energy, Inc.*,
    2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) ........................................................... 17

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .............................................................................. *passim*

*Watson v. USA Today Sports Media Grp.*,
    2018 WL 2316634 (S.D.N.Y. May 8, 2018) (Buchwald, J.) ................................... 7

*Wilson v. Triller, Inc.*,
    2022 WL 1138073 (S.D.N.Y. Apr. 18, 2022) ................................................. 10, 17

*Zevon v. Am. Express Co.*,
    2021 WL 4330578 (S.D.N.Y. Sept. 22, 2021) ...................................................... 23

## STATUTES

9 U.S.C. § 2 ............................................................................................................ 7

740 ILCS 14/15(a). ........................................................................................ *passim*

740 ILCS 14/15(b) ......................................................................................... *passim*

## RULES

Fed. R. Evid. 201(b)(2) ............................................................................................ 4

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 3, 21

Fed. R. Civ. P. 12(b)(3) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................. *passim*

Defendant The Estée Lauder Companies, Inc. ("Estée Lauder") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), or, in the alternative, to compel arbitration of Plaintiff's claims on an individual basis (altogether, the "Motion").[1]

## INTRODUCTION

Plaintiff Celia Castelaz, an Illinois resident, filed this action on behalf of herself and a purported class of other Illinois residents, asserting two claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), based on a feature on Estée Lauder's website (the "Website") that allows customers to virtually "try on" certain cosmetic products (the "Virtual Try-On Tool").  After choosing to use the Virtual Try-On Tool repeatedly "over the past 6-8 months" for extended periods of time, Compl. ¶ 19, Plaintiff now contends that Estée Lauder allegedly collected and is in possession of her "facial geometry"—an allegedly protected "biometric identifier"—without her consent in violation of §§ 15(a) and (b) of BIPA. Plaintiff cannot pursue this putative class action in this Court because she is bound by the Website's Terms and Conditions (the "Terms") which include broad arbitration and class action waiver provisions.  But even if the Website's Terms did not mandate individual arbitration (and they do), Plaintiff's claims fail because BIPA does not apply extraterritorially, she has pled no facts to plausibly establish her claims, and she has pled no facts showing that the purported statutory violation caused a concrete injury, as required by *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and its progeny.

*First*, Plaintiff's claims should be dismissed because, as the Complaint itself acknowledges, Compl. ¶ 54, the Terms contain binding and valid arbitration and class action

---

[1]     All "Ex. __" citations refer to exhibits attached to the declaration of Sylvia E. Simson, dated August 29, 2022, in support of the Motion.

waiver provisions, requiring that "any dispute relating in any way" to Plaintiff's use of the Website be submitted to arbitration in New York on an individual basis.  Ex. 1 at 7 (§ 16) (capital letters omitted).  Unable to dispute the applicability of these provisions, Plaintiff resorts to alleging that she "does not recall reviewing" the Terms and "does not remember Estée Lauder making" them "readily accessible."   Compl. ¶¶ 20, 24.  But Plaintiff's alleged lack of recollection does nothing to render her assent to the conspicuously displayed Terms any less binding or effective.  In fact, despite her claimed lack of memory, Plaintiff not only repeatedly references the Terms throughout her Complaint, *see id.* ¶¶ 18, 20, 24, 52, 54-56, but affirmatively relies on them to bring this action in New York and to assert that venue is "appropriate in this District."  *Id.* ¶ 18.  Plaintiff is bound by the Terms as she had notice of them and should be estopped from selectively repudiating the Terms' arbitration and class action waiver provisions while at the same time knowingly exploiting other provisions of the very same Terms governing the Website.  Accordingly, the Court should dismiss the Complaint under Rule 12(b)(3) or, in the alternative, compel arbitration on an individual basis.

**Second**, even if the Terms did not mandate individual arbitration (and they do), the Complaint should be dismissed because it is devoid of allegations that Estée Lauder—a Delaware corporation with a New York principal place of business—took **any** action in violation of BIPA in Illinois, as is required to avoid Illinois' prohibition on the extraterritorial application of BIPA.  In this regard, Plaintiff's allegations here are no different than those in *McGoveran v Amazon Web Services, Inc.*, 2021 WL 4502089 (D. Del. Sept. 30, 2021), where the court, in dismissing that plaintiff's complaint, made clear that the alleged "BIPA violations must occur in Illinois" to state a plausible claim and that a plaintiff's residency is "not enough [of] an Illinois connection in order to survive a motion to dismiss based on extraterritoriality."  *Id.* at *3-4.  In other words, a lawsuit

does not and cannot implicate BIPA unless the defendant's alleged violative conduct occurred in Illinois.   Because no such allegations exist here, the Complaint should be dismissed under Rule 12(b)(6).

*Third*, even if BIPA applied extraterritorially (and it does not), Plaintiff's claims should be dismissed under Rule 12(b)(6) for the additional reason that Plaintiff pleads no facts to plausibly establish that Estée Lauder collected or is in possession of her "facial geometry," as is required to state a claim under BIPA §§ 15(a) and (b).   Nor could she, as Estée Lauder does ***not*** collect or possess Website visitors' facial geometry through the Virtual Try-On Tool or otherwise.   Unable to specifically allege what actions Estée Lauder took in violation of BIPA or how the Virtual Try-On Tool operates, Plaintiff falls back on conclusory allegations devoid of any further factual enhancement and allegations that merely parrot BIPA's statutory language.   But such allegations are plainly insufficient to state a plausible claim under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

*Fourth*, even if Plaintiff stated a plausible BIPA claim (and she does not), the Complaint should be dismissed under Rule 12(b)(1) because Plaintiff comes nowhere close to pleading that she suffered a concrete harm as a result of the alleged BIPA violations, as is necessary to satisfy Article III's injury-in-fact requirement—an absolute precondition to maintaining this action in federal court.   As the Supreme Court and the Second Circuit recently made abundantly clear: "No concrete harm; no standing." *Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *TransUnion*, 141 S. Ct. at 2200).

For these reasons and as explained further below, the Motion should be granted and the Complaint should be dismissed in its entirety, with prejudice and without leave to replead, as Plaintiff already declined any such opportunity and to do so would be futile in any event.

## BACKGROUND

### A.    Plaintiff's BIPA Claims Against Estée Lauder

Plaintiff filed this lawsuit against Estée Lauder on behalf of herself and a purported class of other Illinois residents, asserting two claims under BIPA based on the Website's Virtual Try-On Tool feature, which Plaintiff alleges allows customers to virtually "try on" certain cosmetic products by either uploading an existing photo or using a webcam.  Compl. ¶¶ 10, 15, 43, 44. Plaintiff contends that, through the Virtual Try-On Tool, Estée Lauder allegedly "collected" and "is in possession of" her "facial geometry"—an allegedly protected "biometric identifier"— without her consent in violation of §§ 15(a) and (b) of BIPA.  *Id.* ¶¶ 69-72, 77-79.  Plaintiff alleges that she used the Virtual Try-On Tool "multiple times over the past 6-8 months to try on various types of makeup" spending "thirty minutes to one hour on" the Website "each time."  *Id.* ¶ 19.

Although Plaintiff claims to "not recall reviewing" the Website's Terms or "Privacy Policy" or Estée Lauder making them "readily accessible," *id.* ¶¶ 20, 24, she repeatedly references and affirmatively relies on them throughout her Complaint.  *Id.* ¶¶ 18, 20, 24, 47-48, 52, 54-56.[2] Notably, she affirmatively relies on the Terms to bring this action in New York and to assert that venue is "appropriate in this District."  Compl. ¶ 18.  She then also concedes in her own pleading that the Terms "include an arbitration clause, class action waiver, and New York jurisdiction and choice-of law clauses."  *Id.* ¶ 54.

---

[2]    The Website's "Privacy Policy"—a link to which Plaintiff admits visitors receive before using the Virtual Try-On Tool, Compl. ¶¶ 47-48, 52—identifies the broad (but non-biometric) categories of information that Estée Lauder may collect from visitors.  *See* Ex. 2 at 1-2.

The Court may take judicial notice of the content of the Website's Terms and Privacy Policy as publicly available sources "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also Force v. Facebook, Inc*., 934 F.3d 53, 59-60 & n.5 (2d Cir. 2019) (taking judicial notice of Facebook's terms of service and content moderation policies).  The Court may also consider the Terms and Privacy Policy in deciding this Motion because, as noted above, those documents are repeatedly referenced in and integral to the allegations in the Complaint. *See Int'l Audiotext Network, Inc. v. AT&T Co*., 62 F.3d 69, 72 (2d Cir. 1995) (courts may consider documents not attached to a complaint in deciding a motion to dismiss when those documents are incorporated by reference or "integral" to a plaintiff's claims).

**B.** **The Website's Terms Contain Binding Arbitration and Class Action Waiver Provisions**

The Terms state upfront that disputes between Estée Lauder and users of its Website, like Plaintiff, are subject to binding arbitration on an individual, non-class basis.  Ex. 1 at 1.  The Terms' second and third paragraphs provide, in relevant part:

> THE SECTION BELOW TITLED "DISPUTES" CONTAINS A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER.  THEY AFFECT YOUR LEGAL RIGHTS.  PLEASE READ THEM.
>
> *          *          *
>
> By accessing or using the Site, you are acknowledging that you have read, understand, and agree, without limitation or qualification, to be bound by these Terms and Conditions.  IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS, YOU MAY NOT USE OUR SITE.

*Id.*  (capital letters in original); *see also* Ex. 3 at Part B (screenshot of Terms as displayed without scrolling).

The section titled "Disputes," in turn, contains the binding arbitration and class action waiver provisions, as well as a New York choice-of-law clause.  Ex. 1 at 7.  The arbitration provision, located in the first paragraph of the "Disputes" section, makes clear that any dispute relating to Plaintiff's use of the Website must be submitted to arbitration in New York:

> ANY DISPUTE RELATING IN ANY WAY TO YOUR USE OF THE SITE, THESE SITE TERMS AND CONDITIONS, OR THE RELATIONSHIP BETWEEN THE PARTIES (OTHER THAN CLAIMS RELATING TO THE INTELLECTUAL PROPERTY RIGHTS OF ESTÉE LAUDER OR OUR PARENTS, SUBSIDIARIES, AFFILIATES, PARTNERS OR LICENSORS OR CLAIMS IN EQUITY) SHALL BE SUBMITTED TO CONFIDENTIAL ARBITRATION IN NEW YORK AND YOU AGREE TO SUBMIT YOURSELF TO THE JURISDICTION AND PROCEEDINGS THEREOF.  ARBITRATION MEANS THAT AN ARBITRATOR(S) WILL DECIDE THE CLAIM, AND YOU WILL NOT HAVE THE RIGHT TO SUE IN COURT OR TO HAVE A JUDGE OR JURY DECIDE YOUR CLAIM.

*Id.* (capital letters in original).[3]

The arbitration provision also makes clear that any threshold questions of arbitrability or scope must be decided by an arbitrator, and identifies the applicable rules under which any arbitration will be conducted:

> It is further agreed that any dispute over the scope of this arbitration provision and any dispute as to whether a claim is arbitral shall be submitted to the arbitrator for decision. . . . Arbitration under this agreement shall be conducted under the Consumer-Related Disputes Supplementary Rules then prevailing with the American Arbitration Association ["AAA"].  The arbitrator's award shall be binding . . . .

Ex. 1 at 7.

The Terms' class action waiver provision, located in the second paragraph of the "Disputes" section, requires that Plaintiff's claims be resolved by arbitration on an individual basis and precludes any class litigation:

> You agree that any arbitration or proceeding shall be limited to the dispute between us and you individually, and (i) no arbitration or proceeding shall be joined with any other; (ii) there is no right or authority for any dispute to be arbitrated or resolved on a class action-basis or to utilize class action procedures; and (iii) there is no right or authority for any dispute to be brought in a purported representative capacity on behalf of the general public or any other persons.  YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST US ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

*Id.* (capital letters in original).

---

[3]    This is the only language in the Terms relating to venue or forum, and necessarily is the language in the Terms that Plaintiff is relying on to contend in her Complaint that "the Terms require that any action brought against Estée Lauder be brought in New York" such that "[v]enue is . . . appropriate in this District."  Compl. ¶ 18.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED IN FAVOR OF ARBITRATION ON AN INDIVIDUAL BASIS

The Federal Arbitration Act ("FAA"), which applies here, provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Consistent with that statutory mandate, the Supreme Court has repeatedly held that the FAA established "a liberal federal policy favoring arbitration agreements," and that courts must "rigorously enforce" such agreements "according to their terms."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1618, 1621 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (same).  In rigorously enforcing arbitration agreements, courts "apply a standard similar to that applicable to a motion for summary judgment" and consider "all relevant, admissible evidence" in the parties' papers.  *Watson v. USA Today Sports Media Grp.*, 2018 WL 2316634, at *2 (S.D.N.Y. May 8, 2018) (Buchwald, J.) (compelling arbitration).

To determine whether a claim is subject to arbitration, a court's analysis is limited to a two-step inquiry into (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute at issue falls within the scope of that agreement.  *Id.*  If the answer to both questions is yes, the FAA "mandates" that arbitration be compelled.  *Id.*  Importantly, courts need not reach the second inquiry where the parties' agreement delegates questions of scope to the arbitrator, in which case the court must reserve that issue for arbitration, too.  *See KPA Promotions & Awards, Inc. v. JPMorgan Chase & Co.*, 2021 WL 1317163, at *5 (S.D.N.Y. Apr. 8, 2021) (Buchwald, J.) (compelling arbitration).

Here, a valid agreement to arbitrate exists because Plaintiff had actual and inquiry notice of the Terms, and Plaintiff can and should be estopped from ignoring the Terms' arbitration and class action waiver provisions while at the same relying on language in the Terms to file this

7

lawsuit in this Court.  Because the Terms' arbitration provision delegates questions of arbitrability and scope to the arbitrator, this Court's analysis should end here.  But if the Court elects to address the second inquiry, both of Plaintiff's claims are unquestionably covered by the Terms' broad arbitration provision.  Accordingly, the Court should dismiss the Complaint under Rule 12(b)(3).[4]

## A. Plaintiff Agreed to the Terms' Arbitration and Class Action Waiver Provisions

### 1. Plaintiff Had Actual and Constructive Notice of the Terms

The question of whether a valid agreement to arbitrate exists is governed by state contract law, and under New York law,[5] the validity of an online agreement depends on whether the user had "actual or constructive" notice of the website's terms. *Lewis v. ANSYS, Inc.*, 2021 WL 1199072, at \*5 (S.D.N.Y. Mar. 30, 2021) (finding that user had "actual or constructive knowledge of the terms" and explaining that "there is no general aversion to electronically executed arbitration agreements in New York law").  Plaintiff here had **both**.

Plaintiff concedes that she had actual notice by repeatedly referencing the Terms in her pleading, Compl. ¶¶ 18, 20, 24, 52, 54-56, and by expressly invoking them as her basis for both filing this action in New York and contending that venue is proper. *Id.* ¶ 18*; see also e.g.*, *Reis, Inc.*

---

[4]    Dismissal under Rule 12(b)(3) is proper because both of Plaintiff's claims are subject to arbitration and "an agreement to arbitrate is a type of forum-selection clause." *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 432 F. Supp. 3d 390, 399, 401 (S.D.N.Y. 2020).  If the Complaint is not dismissed, the Court should compel Plaintiff to arbitrate her claims on an individual basis. *See, e.g.*, *KPA Promotions*, 2021 WL 1317163, at \*4-5 & n.7 (compelling individual arbitration); *Bethune v. Lendingclub Corp.*, 2017 WL 462287, at \*4 (S.D.N.Y. Jan. 30, 2017) (Buchwald, J.) (same).

[5]    New York law applies here because, as Plaintiff herself acknowledges, Compl. ¶ 54, the Terms contain a New York choice-of-law provision. Ex. 1 at 7 (§ 16).  That provision—located in the same section of the Terms on which Plaintiff relies to contend that venue is proper, Compl. ¶ 18—broadly provides that, "[w]ith respect to any dispute" or "claim regarding the [Website], all rights and obligations and all actions contemplated by" the Terms are governed by New York law. Ex. 1 at 7 (§ 16).  Because Plaintiff's claims indisputably relate to the Website, New York law applies to this dispute.  And, if New York law applies, then Plaintiff cannot assert Illinois statutory claims against Estée Lauder. *See e.g.*, *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. 3d 494, 504-05 (E.D.N.Y. 2016) (holding that New York choice of law provision barred non-New York statutory claims); *Horton v. Dow Jones & Co.*, 2019 WL 952314, at \*1 n.1 (S.D.N.Y. Feb. 27, 2019) (explaining that if the court "were to reach the merits of Plaintiff's claim, it is difficult to see how it would survive, as it is based on Michigan statutory law and the parties expressly agreed [in the online agreement] that New York [law] would apply"), *aff'd*, 804 F. App'x 81 (2d Cir. 2020).

*v. Spring11 LLC*, 2016 WL 5390896, at *13 (S.D.N.Y. Sept. 26, 2016) (finding actual notice of terms based on allegations in pleading).

Even if Plaintiff did not have actual notice (and she did), a website's terms are binding if a "reasonably prudent user" would have had constructive (or "inquiry") notice of them. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) (finding that user was on inquiry notice); *Himber v. Live Nation Worldwide, Inc.*, 2018 WL 2304770, at *3-5 (E.D.N.Y. May 21, 2018) (same).  Central to the inquiry notice analysis is the overall "design and content" of the website and whether the terms are presented in a clear and conspicuous manner.  *Meyer*, 868 F.3d at 74-75; *Himber*, 2018 WL 2304770, at *3-5.  Under this standard, Plaintiff had inquiry notice of the Website's Terms, too.

Estée Lauder's Website puts any reasonably prudent user on inquiry notice.  Clear and conspicuous hyperlinks to the Terms are contained on the Website's homepage, the same webpage as the Virtual Try-On Tool, and on any other webpage that Plaintiff may have viewed while navigating the Website.  *See* Ex. 3.  Indeed, if Plaintiff visited the Website and used the Virtual Try-On Tool to test "various types of makeup," as she claims, she would have seen the hyperlink to the Terms several times.  Compl. ¶ 19; *see also* Ex. 3 at Parts A and D (demonstrating what appears on the homepage for the Website and the homepage for the Virtual Try-On Tool, respectively); *Himber*, 2018 WL 2304770, at *5 (finding that plaintiff was on inquiry notice because, by "using the website," he "would have clicked on multiple" webpages, which "contained the reasonably conspicuous hyperlinked Terms of Use").  A hyperlink to the Terms is also located on the webpage containing the Website's "Privacy Policy," *see* Ex. 3 at Part C, which the Complaint concedes that visitors receive through a pop-up notification before using the Virtual Try-On Tool.  Compl. ¶¶ 47, 48.

9

The hyperlink to the Terms towards the bottom of any webpage is typically located under a large, contrasting-colored "Terms & Privacy" heading in bold within a distinctive blue banner. Ex. 3 at Part A.  In addition to this hyperlink, the website provides users with several other potential and conspicuous notifications with respect to the Terms, including (1) when a new customer creates a user account (Ex. 3 at Part E), (2) when an existing customer signs into his or her account (*id.*), (3) during the checkout and payment process (Ex. 3 at Part F), and (4) at various other webpages on the Website, including the "customer service" page and in connection with the "Estée E-List Loyalty Program."  Ex. 3 at Part G.

Tellingly, Plaintiff does not allege that she did not notice or review the Terms—only that she "does not recall reviewing" them.  Compl. ¶ 20.  But whether Plaintiff recalls reviewing or in fact did review the Terms is not relevant to whether she was on inquiry notice.  *See, e.g.*, *Meyer*, 868 F.3d at 79 ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice."); *Wilson v. Triller, Inc.*, 2022 WL 1138073, at *2, *9 (S.D.N.Y. Apr. 18, 2022) (holding that plaintiff was on inquiry notice of app's terms of service despite her allegation that she did "not recall seeing the Terms").  Nor is whether Plaintiff clicked on one of the Website's many conspicuous links to the Terms relevant.  *See, e.g.*, *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) ("Whether [plaintiff] actually clicked on the hyperlinked terms to read the [terms of service] or the Privacy Policy is immaterial; what matters is that notice of these terms was reasonably conspicuous.")  Indeed, had Plaintiff elected to do so, she should have seen the following two statements upfront, without any scrolling:

- "THE SECTION BELOW TITLED 'DISPUTES' CONTAINS A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER.  THEY AFFECT YOUR LEGAL RIGHTS.  PLEASE READ THEM;" and

- "By accessing or using the Site, you are acknowledging that you have read, understand, and agree, without limitation or qualification, to be bound by these Terms and Conditions.  IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS, YOU MAY NOT USE OUR SITE."

Ex. 3 at Part B (screenshot of Terms as displayed without scrolling).  Plaintiff's apparent lack of memory does nothing to render her assent to the terms any less binding or effective.[6]

That Plaintiff had constructive notice of the Terms is further supported by a concession made by Plaintiff in her own pleading.  Plaintiff herself concedes that she used the Virtual Try-On Tool "multiple times over the past 6-8 months," spending "thirty minutes to one hour" on the Website "each time."  *Id.* ¶ 19; *cf. Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401-02 (2d Cir. 2004) (user's repeated use of a website supported knowledge of the website's terms); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *4-5 (N.D. Cal. Apr. 1, 2005) (holding that plaintiff's "repeated" use of defendant's website with link to "Terms of Use" on nearly every page was sufficient to impute plaintiff's knowledge of such terms).  The suggestion that Plaintiff did not notice the Terms on Estée Lauder's Website after spending hours on it over the course of several months is implausible.

Because Plaintiff had actual and constructive notice of the Terms, she is bound by them and a valid agreement to arbitrate on an individual basis exists.

## 2.    Plaintiff Is Bound By the Terms Under the Doctrine of Equitable Estoppel

Plaintiff's claims are also subject to arbitration under the doctrine of equitable estoppel. That doctrine provides that a plaintiff is estopped from repudiating an arbitration provision where she relies on or directly benefits from the agreement containing that provision in bringing suit.

---

[6]    Plaintiff alleges that she "does not remember" the Terms being "readily accessible," incorrectly claiming that a hyperlink to them is "only visible once a user scrolls down to the bottom of Estée Lauder's page."  Compl. ¶¶ 24, 56.  As explained above, that is far from the case.

*See, e.g., Great Lengths Universal Hair Extensions S.R.L. v. Gold*, 2017 WL 1731184, at *5 (S.D.N.Y. Mar. 29, 2017) (holding that non-signatory plaintiffs were "estopped from avoiding the burdens" of agreement's "arbitration clause" where they "knowingly exploited" that same agreement by filing a lawsuit based on a non-compete provision therein); *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 285 (S.D.N.Y. 2015) (finding that a non-signatory could be compelled to arbitrate when he brought suit seeking to enforce the agreement that contained the arbitration clause); *HD Brous & Co. v. Mrzglocki*, 2004 WL 376555, at *7-8 (S.D.N.Y. Feb. 26, 2004) (applying equitable estoppel where plaintiff "relied upon" an agreement "to claim benefits in the present litigation" and then sought to "selectively repudiate the obligation to arbitrate set forth in the [same] Agreement").[7]

Here, Plaintiff cannot have it both ways—she may not knowingly exploit the Terms to her benefit, including to file this action in New York and to assert that venue is proper, Compl. ¶ 18, while at the same time selectively ignoring, and then when raised by Estée Lauder repudiating, the Terms' arbitration and class action waiver provisions.[8]  Tellingly, the arbitration and class action waiver provisions are in the very same two-paragraph "Disputes" section of the Terms that

---

[7]     *See also Nortek Inc. v. ITT LLC*, 2022 WL 656896, at *2 n.6 (S.D.N.Y. Mar. 4, 2022) (noting that estoppel prevents a non-signatory from disclaiming an arbitration clause where he seeks to "exploit" a "benefit" of the same agreement); *Allen v. Shutterfly*, 2020 WL 5517172, at *8 (N.D. Cal. Sept. 14, 2020) (compelling arbitration and explaining that equitable estoppel prevents plaintiff from invoking "the 'choice of law' provision in the 2018 [terms of service], while simultaneously preventing [defendant] from enforcing the arbitration clause of the same agreement"); *MoistTech Corp. v. Sensortech Sys., Inc.*, 2015 WL 12778416, at *6 (C.D. Cal. Sept. 14, 2015) ("Neither Plaintiff nor this Court's independent research can locate a single case where a nonsignatory to a contract is afforded significant rights under the contract, sues for claims related to rights created by the contract, and is able to avoid the applicability of the contract's valid arbitration clause."); *Carwile v. Samsung Telecomms. Am., LLC*, 2013 WL 11030374, at *3 (C.D. Cal. July 9, 2013) (compelling arbitration because "[i]t would be wholly inconsistent for [plaintiff] to claim that she never consented to the terms of the Warranty, while at the same time attempting to enforce her rights under the Warranty," and explaining that plaintiff "may not, after the fact, pick and choose the terms she wishes to be bound by, depending on whether she likes the end result").

[8]     In her response to Estée Lauder's pre-motion letter, Plaintiff did not even attempt to address Estée Lauder's argument that Plaintiff is bound by the Terms' arbitration and class action waiver provisions under the doctrine of equitable estoppel.  (Rec. Doc. 18).  Instead, Plaintiff reaffirmed that she knowingly exploited the Terms "to demonstrate that this Court has jurisdiction over Defendant, and [that] Defendant has conceded this forum is an appropriate venue."  *Id.* at 2.

Plaintiff relies upon in bringing her lawsuit.  *See* Ex. 1 at 7 (§ 16).  To permit Plaintiff to rely on the Terms when it works to her advantage and repudiate them when it works to her disadvantage "would not only flout equity" but would undermine "the congressional purpose underlying the FAA."  *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 397 (E.D.N.Y. 2013).

### B.      The Arbitration Agreement Delegates Questions of Arbitrability and Scope to the Arbitrator

It is well-settled that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence.'"  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (district court was not permitted to ignore agreement delegating arbitrability question to arbitrator based on court's conclusion that question was "wholly groundless").  And, as this Court has held, references to AAA rules constitute clear and unmistakable evidence that the parties intended to delegate arbitrability questions to the arbitrator.  *See, e.g.*, *Arshad v. Transp. Sys.*, 183 F. Supp. 3d 442, 447 (S.D.N.Y. 2016) (Buchwald, J.) ("The Second Circuit has repeatedly held [the incorporation of AAA rules] to clearly and unmistakably indicate the parties' intent to delegate the issue of arbitrability to an arbitrator. . . .  The same result obtains here.").

Here, the Terms plainly state that "any dispute as to whether a claim is arbitral shall be submitted to the arbitrator for decision."  Ex. 1 at 7 (§ 16).  And the Terms expressly reference the AAA rules and provide that those rules will govern any arbitration.  *Id.*  Accordingly, any issues of scope or enforceability are for the arbitrator to decide.  *See KPA Promotions*, 2021 WL 1317163, at *5 (compelling arbitration and declining to address plaintiffs' "objections concerning the scope of the arbitration provisions").  And even if this Court were to consider the question of scope (and it should not), individual arbitration would still be required because Plaintiff's claims fall squarely

under the Terms' broad arbitration and class action waiver provisions, requiring that "any dispute relating in any way" to use of the Website be submitted to arbitration in New York on an individual basis.  Ex. 1 at 7 (§ 16) (capital letters omitted); *see also KPA Promotions*, 2021 WL 1317163, at *2, *5 (compelling arbitration where online service agreement provided that "any dispute . . . relating in any way to this agreement, or to the online service" must be resolved by arbitration); *Himber*, 2018 WL 2304770, at *6 (compelling arbitration because Terms of Use on defendant's website provided that "[a]ny dispute . . . relating in any way to your use of the Site . . . will be resolved by binding arbitration" and plaintiff's statutory claims "relate to [plaintiff's] use of [defendant's] website" (emphasis in original)).

In sum, Plaintiff's attempted evasion of the Terms' arbitration provision by initiating a putative class action in New York is impermissible.  Plaintiff agreed to individually arbitrate all claims arising from her use of the Website, including the Virtual Try-On Tool.  She must abide by her agreement, and the Complaint should be dismissed in favor of arbitration under Rule 12(b)(3).

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A PLAUSIBLE BIPA CLAIM

Even if the Terms did not mandate individual arbitration (and they do), the Complaint should be dismissed under Rule 12(b)(6) because, as set forth below, Plaintiff fails to state a plausible BIPA claim in several respects.  A motion to dismiss under Rule 12(b)(6) should be granted when the complaint fails to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements.  *See id.* at 678-680 ("[Rule 8(a)] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

### A.   Plaintiff Fails to Plausibly Allege That Any of Estée Lauder's Alleged Conduct Occurred in Illinois

Plaintiff fails to state a claim under BIPA because she does not plausibly allege that any of Estée Lauder's alleged conduct occurred in Illinois, as is required to avoid Illinois' prohibition on the extraterritorial application of BIPA.

The Illinois Supreme Court has explained that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) ("*Avery*").  Where a statute lacks an express term allowing extraterritorial application, a plaintiff claiming a violation of the statute must show the violation "occurred primarily and substantially in Illinois."  *Id.* at 854. Applying *Avery*, federal courts have consistently held that BIPA has no extraterritorial effect because it lacks an express provision authorizing such reach.  *See, e.g.*, *Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 686 (N.D. Ill. 2020) ("[B]ecause 'none of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect[,] BIPA does not apply extraterritorially.'"); *McGoveran*, 2021 WL 4502089, at *6 ("BIPA does not apply extraterritorially[.]").  Accordingly, Plaintiff here must plead facts to establish that the alleged BIPA violations occurred "primarily and substantially" in Illinois.  *McGoveran*, 2021 WL 4502089, at *3.

*McGoveran*, a recent decision from the District of Delaware granting a Rule 12(b)(6) motion to dismiss due to BIPA having no extraterritorial application, is instructive.  There, the complaint alleged that the defendants used voice audio from telephone calls originating from Illinois to create "voiceprints," an alleged form of biometric information under BIPA.  Absent from the pleading, however, was any "indication . . . that Defendants did anything in Illinois."  *Id.*

at *4.   Indeed, the plaintiffs there pled no facts to plausibly show that defendants created the purported voiceprints in Illinois, possessed the voiceprints in Illinois, or stored such data in Illinois. *See id.*   Given these omissions, the court held that plaintiffs failed to plead that the alleged BIPA violations occurred "primarily and substantially" in Illinois, as *Avery* requires.  *Id.* at *4, *6.   In so holding, the court expressly rejected plaintiffs' argument that their Illinois residency was sufficient to satisfy *Avery*, explaining:

> Plaintiffs' concrete allegations about this case's connections to Illinois are nothing more than repeated statements (phrased three different ways) about Plaintiffs' residency:  Plaintiffs' phone calls . . . 'originated from Illinois' because Plaintiffs live there; the calls were 'from Illinois citizens' because Plaintiffs live there; and the calls were placed from 'clearly recognizable Illinois phone numbers' because, once again, Plaintiffs live there. . . . *A plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality*.

*Id.* at *4 (emphasis added).

Here, too, the Complaint contains *no* allegations about *any* conduct, much less conduct in violation of BIPA, by Estée Lauder—a Delaware corporation with a New York principal place of business, Compl. ¶¶ 17, 25—in Illinois.   And, like *McGoveran*, the sole connection to Illinois alleged in the Complaint is Plaintiff's residency and use of the Virtual Try-On Tool from her residence.  *Id.* ¶ 19.   But, as *McGoveran* confirms, that is insufficient to avoid dismissal on extraterritorially grounds.  2021 WL 4502089, at *6; *see also Wilson*, 2022 WL 1138073, at *10 (dismissing Illinois statutory claim on extraterritoriality grounds where plaintiff's "only allegation relating to Illinois [was] that she is a resident" and "other factors point[ed] outside the state, including that the defendant is a Delaware corporation with its principal place of business in New York . . . and that the [app's terms of use] include a New York choice of law provision"); *Super Pawn Jewelry & Loan, LLC v. Am. Env't Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill.

Mar. 29, 2013) (dismissing Illinois statutory claim on extraterritoriality grounds where plaintiff's residency was the "sole connection to Illinois").

Moreover, the Complaint here dedicates a single sentence to attempting to plead the location of Estée Lauder's alleged actions in violation of BIPA.  *See* Compl. ¶ 51.  That sentence (incorrectly) asserts that Estée Lauder "collects, captures, possesses, or otherwise obtains visitors' biometric data ***locally*** using" a non-party's "proprietary algorithm downloaded from [its] server."  *Id.* (emphasis added).  But, even accepting this conclusory allegation as true (and it is not), the Complaint says nothing about what obtaining data "locally" means.  Nor does the Complaint allege anything about the location of the purported "server."   Moreover, New York courts look to dictionary definitions to aid in determining the plain and ordinary meaning of words, and dictionary definitions indicate that "locally" means "with reference to a particular area or one's neighborhood" or, in the context of computing, to be accessed on one's own and "without the use of a network."  Oxford English Dictionary; *see also* Merriam-Webster Dictionary ("locally" means "with respect to a particular place or situation"); The American Heritage Dictionary ("locally" means "[o]f, relating to, or characteristic of a particular place"); Cambridge Business English Dictionary ("locally" means "done in, made in, or connected with a particular area").[9]  Here, the only location, place, or "neighborhood" tied to Estée Lauder in the Complaint are the States of New York and Delaware, not Illinois.  *See* Compl. ¶¶ 17, 25.

At bottom, what Plaintiff seeks through this lawsuit in New York is precisely what *McGoveran* rejected as "overly broad and ultimately untenable": a holding that "as long as the source of the biometric data is Illinois, that's enough to establish liability."  2021 WL 4502089, at

---

[9]     The dictionaries cited herein are as follows:  Oxford English Dictionary, https://www.oed.com/; Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/locally; The American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=locally;   and   Cambridge   Business   English   Dictionary, https://dictionary.cambridge.org/us/dictionary/english/locally (all last visited Aug. 29, 2022).

*6.  As *McGoveran* explained, Plaintiff's proposed holding "flies in the face of Illinois cases holding that a plaintiff's residency is not enough to survive a motion to dismiss based on extraterritoriality."  *Id*.  Plaintiff should not be permitted to "stretch[]" BIPA "so far" to impose liability on Estée Lauder via a New York court, based exclusively on allegations regarding her residency in Illinois and use of the Website from her residence.  *Id.*  Indeed, "[t]here is no basis in the statutory language to find that BIPA stretches so far."  *Id.*

Because Plaintiff pleads no facts to establish that Estée Lauder's alleged conduct in violation of BIPA occurred primarily and substantially in Illinois, Plaintiff's claims must be dismissed under Rule 12(b)(6).[10]

### B.  Plaintiff Fails to Plausibly Allege That Estée Lauder Collected or Is in Possession of Her Biometric Information

Even if Plaintiff had plausibly alleged that Estée Lauder's alleged conduct occurred in Illinois (and she has not), Plaintiff nevertheless fails to state a claim because she pleads no facts to plausibly establish that Estée Lauder "collected" or "is in possession of" her "facial geometry," as is required to state a claim under BIPA §§ 15(a) and (b).  Nor could she, as Estée Lauder does ***not*** collect or possess Website visitors' facial geometry or other biometrics through the Virtual Try-On Tool or otherwise.

Unable to specifically allege what actions Estée Lauder took in violation of BIPA or how the Virtual Try-On Tool operates, the Complaint is replete with conclusory allegations devoid of further factual enhancement and allegations that parrot BIPA's statutory language.  *See, e.g.,*

---

[10]     Estée Lauder recognizes that other district courts have opted not to resolve extraterritoriality at the pleading stage where the issue required fact development in discovery.  *See, e.g., McGoveran*, 2021 WL 4502089, at *5-6 (distinguishing cases cited in Plaintiff's response to Estée Lauder's pre-motion letter (Rec. No. 18)).  But, unlike those cases, there is no factual question that requires discovery because the Complaint on its face is devoid of any allegations that Estée Lauder—an undisputed Delaware corporation with a New York principal place of business (Compl. ¶¶ 17, 25)—took any actions in violation of BIPA in Illinois.  *See McGoveran*, 2021 WL 4502089, at *5 (explaining that even if some courts "have been hesitant to grant motions to dismiss BIPA claims based on extraterritoriality," there are "exceptions" and "this case is one of them").

Compl. ¶¶ 11-14, 28-41, 48, 49, 51-53, 57, 69-74, 77-82.   But "mere conclusory statements" unsupported by facts are insufficient no matter how many times they are repeated.  *Iqbal*, 556 U.S. at 678.  Nor can Plaintiff "merely parrot the statutory language of the claims" she is pleading; she must provide "specific facts to ground those legal claims." *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876-77 (N.D. Ill. 2020) (dismissing BIPA § 15(b) allegations for failure to state a claim).

In fact, courts regularly dismiss BIPA claims where, as here, the plaintiff "merely parrot[s] BIPA's statutory language" without "alleging how, when, or any other factual detail" regarding the alleged collection or possession of biometrics.  *See, e.g.*, *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *3-4 (N.D. Ill. July 27, 2021) (dismissing BIPA §§ 15(a) and (b) claims); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 967-69 (N.D. Ill. 2020) (same); *see also Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *6 (S.D. Ill. Aug. 5, 2022) (dismissing BIPA § 15(b) claim where "allegations in the complaint [did] not take" plaintiff's claim 'across the line from conceivable to plausible'").

As one paradigmatic example of Plaintiff's conclusory and boilerplate approach to pleading, Plaintiff alleges that the "technology" underlying the "Virtual Try-On tool operates by capturing the facial geometry of users of Estée Lauder's Virtual Try-On tool, including Plaintiff and the other Class Members."  Compl. ¶¶ 69, 77.  But this circular conclusion—supported by no relevant facts—cannot state a plausible BIPA claim.  Plaintiff also alleges in conclusory fashion that Estée Lauder's Virtual Try-On Tool "collects, captures, possesses, or otherwise obtains visitors' biometric data locally using" a non-party's "proprietary algorithm downloaded from [its] server."  Compl. ¶ 51.  But, again, Plaintiff alleges no facts about this "proprietary algorithm" or how it operates to collect Plaintiff's purported facial geometry, let alone how Estée Lauder allegedly then "collects, captures, possesses or otherwise obtains" such purported biometric data.

Because Plaintiff does not adequately allege facts showing that Estée Lauder "collected" or "is in possession of" her "facial geometry," as is required to state a claim under §§ 15(a) and (b) of BIPA, the Complaint should be dismissed under Rule 12(b)(6).

### C.   Plaintiff Fails to Plausibly Allege Intentional, Reckless, or Negligent Conduct by Estée Lauder

Plaintiff also fails to plead facts showing that Estée Lauder's alleged conduct was intentional, reckless, or negligent, as is required to support her claim for statutory damages on a per BIPA violation basis.  *See* Compl. ¶ 15 (demanding "BIPA-mandated statutory penalties"); *id.* at Request for Relief, ¶ (d).  Instead, Plaintiff merely identifies the question of whether "Estée Lauder's conduct was and is willful, reckless, or negligent" as an alleged "common question[] of law or fact," *id.* ¶ 62, and makes a boilerplate request for statutory damages in her request for relief.  *Id.* at 20.  Plaintiff has alleged no facts from which this Court could infer that Estée Lauder's purported conduct was intentional, reckless, or negligent.  Indeed, Plaintiff has pleaded nothing about Estée Lauder's state of mind or degree of fault.  Plaintiff's claims for statutory damages under BIPA should thus be dismissed.  *See, e.g.*, *Rogers v. CSX Intermodal Terminals*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019) (dismissing BIPA claim for damages based on intentional and reckless conduct where complaint's allegations concerning such conduct did "nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing BIPA claim for statutory damages because plaintiff's "abstract statements regarding damages" were insufficient to establish that the defendant "acted recklessly or intentionally").

## III.    PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT CLAIMS AGAINST ESTÉE LAUDER FOR ALLEGED BIPA VIOLATIONS

Finally, even if the Complaint was not subject to dismissal under Rules 12(b)(3) and 12(b)(6) (and it is), dismissal is required under Rule 12(b)(1) because Plaintiff fails to plead facts showing that she suffered a concrete harm as a result of the alleged BIPA statutory violations, as she must in order to have standing to proceed with her lawsuit in federal court.  Indeed, a plaintiff has the burden to establish Article III standing at every stage of the litigation and must do so "for each claim" asserted and "each form of relief" sought.  *TransUnion*, 141 S. Ct. at 2207-08 (Article III "standing is not dispensed in gross").  And to have Article III standing, a plaintiff must show (1) an injury in fact, (2) a causal connection between that injury and the conduct at issue, and (3) a likelihood that the injury will be redressed by a favorable decision.  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022).

The Supreme Court recently reduced the first of these three elements to a simple formula: "No concrete harm, no standing."  *TransUnion*, 141 S. Ct. at 2200.  *TransUnion* and Second Circuit precedent post-dating *TransUnion* make clear that a mere statutory violation or risk of future harm cannot satisfy Article III's injury-in-fact requirement.  *TransUnion*, 141 S. Ct. at 2205, 2210-11; *Harty*, 28 F.4th, at 443; *Maddox*, 19 F.4th at 63-65.  Rather, a plaintiff must show that the statutory violation or risk of future harm caused her to suffer an independent, concrete harm.  *TransUnion*, 141 S. Ct. at 2205, 2210-11; *Harty*, 28 F.4th at 443; *see also Maddox*, 19 F.4th at 64-66 (holding that plaintiffs failed to "plead enough facts to make plausible" that they "suffered concrete harm due to the [defendant's] violation of the relevant statutes").[11]

---

[11]    *Maddox* involved statutory damage claims for an undisputed violation of a New York statute.  19 F.4th at 60.  Before *TransUnion*, the Second Circuit had distinguished between "substantive" and "procedural" statutory violations and held that a "substantive" statutory violation alone was sufficient to establish Article III standing.  *Id.* at 60-62 (explaining procedural history in *Maddox*).  After *TransUnion*, the Second Circuit on rehearing reversed itself and held that "plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural."  *Maddox*, 19 F.4th at 62, 64 n.2.  The court explained that,

Here, Plaintiff fails to plausibly allege that she suffered a concrete harm as a result of the alleged BIPA violations.  Plaintiff's conclusory assertion that Estée Lauder "shared" her biometric data with unidentified "third parties" and "foreign companies," Compl. ¶¶ 74, 82, is unsupported by a single factual allegation and thus should be disregarded.  *See Iqbal*, 556 U.S. at 678.  Although Plaintiff speculates that her "biometric identifiers" are "at risk of compromise or illicit use by Estée Lauder and others," Compl. ¶ 81, Plaintiff, again, pleads no facts to show that her purported biometric information has actually been comprised or shared with or used by anyone.  And, contrary to what she suggests, the risk of future harm cannot satisfy Article III's injury-in-fact requirement here.  *TransUnion*, 141 S. Ct. at 2205, 2210-11; *Maddox*, 19 F.4th at 63-65.

In her response to Estée Lauder's pre-motion letter, Plaintiff did not mention, much less address, *TransUnion* or *Maddox*.  (Rec. Doc. No. 18).  Instead, relying exclusively on out-of-circuit cases decided prior to *TransUnion*, Plaintiff asserted that the Seventh Circuit "has held that [an] allegation of a BIPA violation, without alleging independent harm, is sufficient for Article III standing."  *Id.* at 3.  *TransUnion*, of course, forecloses Plaintiff's argument.  And, in any event, the Seventh Circuit's pre-*TransUnion* view on Article III standing is not relevant here given the post-*TransUnion* precedent in the Second Circuit to the contrary, which is the binding precedent applicable in this Court.  *See, e.g.*, *Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, 2022 WL 3030390, at *4 (E.D.N.Y. Aug. 1, 2022) (rejecting plaintiff's reliance on "cases in which courts outside this Circuit found that [statutory] violations constitute substantive harms, rather than procedural harms, sufficient to establish concrete injury" because "the Court is bound by the Second Circuit's reconsidered decision in *Maddox*").

---

if "[claimants] (or their lawyers) prefer to form a class and bring their claims in federal court, they must come prepared to prove that they suffered concrete harm due to the [defendant's] violation of the relevant statutes."  *Id.* at 66.

At bottom, the Complaint boils down to a grievance that Estée Lauder did "not inform" her that the Virtual Try-On Tool allegedly collects protected biometric data.  Compl. ¶¶ 20, 48, 52, 63, 72; *see also id.* ¶¶ 74, 82 (alleging injury based on "unknowing loss of control" of purported biometrics).   But *TransUnion* and subsequent Second Circuit precedent make clear that an "informational" injury alone is insufficient to confer Article III standing.  *TransUnion*, 141 S. Ct. at 2214 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'").   Instead, Plaintiff must plead the "downstream" consequences she suffered as a result of not receiving the information she contends Estée Lauder was required to provide. *See, e.g.*, *Laufer v. Ganesha Hospitality LLC*, 2022 WL 2444747, at *2 (2d Cir. July 5, 2022) (dismissing case for lack of subject matter jurisdiction and holding that the district court "erred when it held that 'informational harm,' without any downstream effects, sufficed for Article III injury purposes"); *Harty*, 28 F.4th at 444 (holding that, even if plaintiff could "allege that he was deprived of information to which he is entitled by [statute], he must also allege 'downstream consequences from failing to receive the required information' in order to have an Article III injury in fact"); *Zevon v. Am. Express Co.*, 2021 WL 4330578, at *3 (S.D.N.Y. Sept. 22, 2021) (no Article III standing where plaintiff did "not allege any downstream consequences from failing to receive the required information").   Plaintiff has not alleged, and cannot allege, any such "downstream" consequences and thus cannot establish the requisite concrete harm.

Because Plaintiff has not and cannot allege facts to establish that she suffered a concrete harm as a result of the alleged BIPA violations, her Complaint must be dismissed for lack of Article III standing.   *See, e.g.*, *Laufer*, 2022 WL 2444747, at *3 (dismissing action for lack of Article III standing); *Harty*, 28 F.4th at 444-45 (same); *Maddox*, F.4th at 64-66 (same).

## CONCLUSION

For the foregoing reasons, Estée Lauder respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice and without leave to replead.[12]

Dated:  August 29, 2022

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:  /s/ *Sylvia E. Simson*
Sylvia E. Simson
Daniel I.A. Smulian
Michael E. Mirdamadi
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
simsons@gtlaw.com
smuliand@gtlaw.com
mike.mirdamadi@gtlaw.com

*Attorneys for The Estée Lauder Companies, Inc.*

---

[12]    Any request by Plaintiff for leave to amend her Complaint should be denied as futile because Plaintiff cannot correct the jurisdictional, pleading, and other defects Estée Lauder has identified through an amended complaint. *See, e.g.*, *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 704-05 (S.D.N.Y. 2017) (denying leave to amend as "futile because the claims asserted in the proposed amended complaint, like the claims in the original complaint, are subject to binding arbitration agreements"); *Madison Capital Mkts. v. Starneth Europe B.V.*, 2016 WL 4484251, at *16 (S.D.N.Y. Aug. 23, 2016) (denying leave to amend as futile where proposed amended complaint "would not survive motions to dismiss for failure to state a claim and to compel arbitration").  Any request for leave should be denied for the additional reason that the Court gave Plaintiff the opportunity to amend her Complaint at the August 1, 2022 pre-motion teleconference on Estée Lauder's contemplated Motion and Plaintiff declined to do so.  *See, e.g.*, *Rosner v. Star Gas Partners, L.P.*, 344 F. App'x 642, 644-45 (2d Cir. 2009) (affirming dismissal of complaint without leave to amend where "district court gave [plaintiffs] the opportunity to amend . . . after a pre-motion telephone conference" and plaintiffs "declined to do so"); *Bldg. Trades Pension Fund of W. Pa. v. Insperity, Inc.*, 2022 WL 784017, at *16 n.10 (S.D.N.Y. Mar. 15, 2022) (Buchwald, J.) (denying leave to amend where plaintiff "had an opportunity to amend its complaint in light of defendants' proposed motion to dismiss . . . and chose not to take that opportunity").